**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **JOSEPH SCOLARO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**INSURANCE SUPERMARKET INC.,** a Delaware corporation,<br><br>*Defendant.* | Case No. ______________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Joseph Scolaro, ("Plaintiff Scolaro" or "Mr. Scolaro") files this Class Action Complaint and Demand for Jury Trial against Defendant, Insurance Supermarket Inc., ("Defendant" or "Insurance Supermarket") because of Defendant's violations of the Telephone Consumer Protection Act ("TCPA"). Defendant violated and continues to violate the TCPA by telephoning consumers without their consent—including consumers whose phone numbers appear on the National Do Not Call registry ("DNC") and consumers who have asked Defendant to stop calling them—and by placing unsolicited telemarketing calls to consumers' cellular telephones with prerecorded calls. Plaintiff seeks injunctive and monetary relief on behalf of every person harmed by Defendant's misconduct. In support of this Complaint, Plaintiff alleges the following based on personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including the investigation undertaken by his counsel.

## PARTIES

1. Plaintiff, Joseph, is a resident of Westwood, Massachusetts.



KAPLAN ROTHSTEIN PRÜSS PERAZA, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 TEL. 305.374.1920

2. Defendant, Insurance Supermarket, is incorporated under the laws of Delaware and maintains its headquarters and principal place of business in Miami, Florida located at 1951 Northwest 7th Ave., Miami, FL 33136. Defendant transacts business throughout the State of Florida.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court also has personal jurisdiction over Defendant because Defendant is headquartered in, and maintains its principal place of business in, this District, and the improper conduct giving rise to this dispute was directed from or emanated from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant is headquartered in, and maintains its principal place of business in, this District, and the improper conduct giving rise to this dispute was directed from or emanated from this District.

## INTRODUCTION

6. The United States Supreme Court has observed that "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020). "For nearly 30 years, the people's representatives in Congress have been fighting back." *Id.*

7. Pursuant to the TCPA, 47 U.S.C. § 227(c), the Federal Communications Commission ("FCC") adopted rules establishing a national "do not call" ("DNC") database of the telephone numbers of consumers who do not wish to receive telephone solicitations. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003) ("DNC Order"). The DNC rule is codified at 47 C.F.R. § 64.1200(c)(2).

8. Data from the online robocall-tracking service "YouMail" indicates that 3.9 billion robocalls were made in August 2026 alone—roughly 125.4 million each day.[1]

9. As of 2016, "[r]obocalls and telemarketing calls [were] . . . the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[2]

10. The FCC has received millions of complaints about unwanted marketing calls, in increasing numbers.[3]

## COMMON ALLEGATIONS

11. Defendant, Insurance Supermarket, markets and provides life insurance products to consumers across the United States.[4]

12. Defendant uses cold-call telemarketing to consumers in an effort to generate business.

13. As Plaintiff's experience demonstrates, Defendant's cold-call telemarketing includes making such telephone calls to telephone numbers listed on the DNC.

14. Defendant continues its improper telemarketing practices even after the called consumer requests that Defendant stop making the telemarketing calls to the called consumer.

---

[1] www.robocallindex.com (Last viewed September 17, 2026).
[2] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (Last viewed September 17, 2026.)
[3] www.fcc.gov/consumer-help-center-data.
[4] https://insurance-supermarket.com/ (Last viewed September 14, 2026.)

15. Defendant's agents and personnel have posted online job reviews and descriptions that openly describe the cold-calling they performed on Defendant's behalf to generate business, including the following:


IS

Sales Representative

INSURANCE SUPERMARKET Sep 2022 - Apr 2024 (1 year 7 months)

Responsible for generating leads and prospecting new clients through cold calling and networking. Analyzed client needs and presented insurance policy options, ensuring informed decision-making. Maintained client records and provided excellent customer service while meeting sales targets.

- Lead Generation
- Cold Calling
- Customer Service
- CRM Software
- Performance Metrics
- Teamwork
- Customer Relationship ...

[5]

[5] https://himalayas.app/@marogold (Last viewed September 17, 2026).

## Aaron Meredith · 3rd

Insurance Supermarket Incorporated

**Insurance Supermarket Incorporated**
5 yrs 9 mos

**Sales Manager**
2021 – Present

· Running meetings

· Host interviews

· Host accountability sessions which can sometimes require write-ups or terminations.

· Listening to live phone calls and helping advisors convert them into sales.

· Pull reports and notice different trends in certain metrics throughout the day/week/month

· Initiating cold calls, overcoming objections, and closing sales

· Developing and maintaining relationships with advisor.

**Sales Agent**
Sep 2021 - Sep 2022 · 1 yr 1 mo

· Recieving inbound calls

· Handling a heavy call volume. Listening to and identifying client needs to resolve customer situations in a friendly, professional manner.

· Sell the features and benefits of products and services using company sales techniques

· Initiating cold calls, overcoming objections, and closing sales

· Developing and maintaining relationships with new and existing clients [6]

## Shavell Cope

Sales Representative

Montego Bay, Saint James, Jamaica · Contact info

### About

Hi my name is shavell cope and I formally known as shevel I have spent over 1 years as an Sales rep/ customer service rep with ADS Global and insurance supermarket where I made 50-600 Cold and Warm calls per day to customers and prospective customers. work from home sales agent calling customers to Present, promote and sell products/services using solid arguments also Maintains and updates customer accounts include contact names, titles and accurate telephone numbers and email addresses and also conduct public opinion poll. [7]

[6] https://www.linkedin.com/in/aaron-meredith-64a12122/ (Last viewed September 17, 2026).
[7] https://www.linkedin.com/in/shavell-cope-453577223/ (Last viewed September 17, 2026).



[8]

16. Insurance Supermarket publicly touts its "proprietary, state-of-the-art dialer," which it states "was custom-made . . . to facilitate a high volume of call traffic."[9]



[10]

17. Insurance Supermarket makes unsolicited telemarketing calls, including calls that deliver prerecorded voice messages, to consumers like Plaintiff in violation of the TCPA. Consumers have reported receiving prerecorded calls that were then connected to Defendant's sales agents.

---

[8] https://himalayas.app/@praisegift (Last viewed September 17, 2026).
[9] https://insurance-supermarket.com/technology/ (Last viewed October 7, 2026.)
[10] https://insurance-supermarket.com/technology/ (Last viewed September 17, 2026).

18. Many consumers have posted online complaints about receiving unsolicited telemarketing calls from or on behalf of Defendant even when consumers' phone numbers were registered on do-not-call lists. For example:

**BUSINESS PROFILE**

Life Insurance

**Insurance Supermarket Inc.**

- Claire H posted on 06/17/2025: "**They use call centers** in **** **to get around**.[*sic*] the **do not call list** . . ." (emphasis added)[11]
- Clifton M posted on 01/23/2024: "I received a call today . . . I asked them what company this is and they said Insurance Supermarket. . . . I did let them know that they were in **violation of the Do Not **** and I am registered. I also asked them not to call me again**." (emphasis added)[12]
- On 11/13/2025 a consumer complained that "Insurance Supermarket uses highly aggressive marketing techniques, . . . These numbers start with a robo-call come-on which is also illegal under FTC guidelines. I have gotten 30+ of these calls in the last few days from their illegal operations. When I finally went through their call process, I was connected to Insurance Supermarket, and finally to agent ***** ******* ( who gave an insurance license #*********. ***** ******* is confirmed to work at Insurance Supermarket, and was reached through the spoofed number ***********. . ." (emphasis added)[13]
- On 04/22/2025 a consumer complained that "Insurance Supermarket . . . is utilizing lead generators who are violating the *** **Do Not Call list** and utilizing Caller ID Spoofing to hide their identities. . . . **This number has been on the *** do not call list since July 1, 2003**.I recorded the calls and finally worked through all the lead generator "validation" individuals and was connected to the actual business purchasing the leads (Insurance Supermarket International). This organization instantly hung up when I explained the violation…" (emphasis added)[14]
- "SOLICITING PHONE ******, EVERY DAY I GET ****** FROM THIS COMPANY THEY HAVE ****** COMING IN FROM NUMBERS THAT CAN NOT BE CALLED BACK ON WITH PRE RECORDED MESSAGE ONES I GET TO *** THEY TELL ME THEY ARE INSURANCE SUPERMARKET . . . I ASK THEM **DO NOT CALL ME I AM ON DO NOT CAL ********* THEY WOULD HANG UP**, I WENT ONLINE AND FOUND THEIR NUMBER AND CALLED DIRECTLY TO REQUEST STOP CALLING BUT THEY WOULD HANG UP ON

---

[11] https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/customer-reviews (Last viewed September 17, 2026.)

[12] Id. (Last viewed September 17, 2026.)

[13] https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/complaints (Last viewed September 17, 2026.)

[14] Id. (Last viewed September 17, 2026.)

ME. I . . . STILL RECEIVE *****. I AM ASKING FOR YOUR HELP TO STOP HAARRASMENT [*sic*] . . . **THEY VIOLATE DO NOT CALL REGISTRY RULES AND VIOLATED ME BY NOT REMOVING MY NUMBER AFTER ASKING ON NUMEROUS OCCASIONS** . . ." (emphasis added)[15]

- "I am being harassed by insurance supermarket. They call me sometimes 6 times a day. I have **asked them multiple times to please not call me anymore**. It does no good" (emphasis added)[16]

19. Plaintiff and the Class have suffered and continue to suffer the same experiences of repeated, unsolicited telemarketing calls, including prerecorded calls, from Defendant, oftentimes involving unsolicited telemarketing calls to individuals whose phone numbers are on the National DNC registry, all within the relevant statutes of limitation. As such Plaintiff initiates this action to obtain injunctive relief compelling Defendant to stop violating the TCPA, together with an award of statutory damages for the members of the Classes.

## PLAINTIFF'S ALLEGATIONS

20. Plaintiff, Joseph. Scolaro, resides in Massachusetts, and his cellular number carries a 781 Massachusetts area code.

21. Plaintiff is the subscriber and exclusive user of the cellular telephone number ending in 7743.

22. Plaintiff first registered his cellular telephone number on the DNC on July 20, 2026.

23. Plaintiff did not thereafter cancel the registration of his cellular phone number on the DNC and his cellular phone number otherwise has not been removed from the DNC.

---

[15] Id. (Last viewed September 17, 2026.)

[16] https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/complaints?page=2 (Last viewed September 17, 2026.)

24. Plaintiff uses his cellular number for personal purposes, in the same way a person would use a residential landline—for example, to speak with family and friends—thereby rendering his cellular number a residential telephone number.

25. Plaintiff personally pays for his cellular phone service, and no business reimburses Mr. Scolaro for those payments.

26. Beginning in or about June 2026, Plaintiff began receiving a succession of unsolicited, prerecorded telemarketing calls on his cell phone from or on behalf of Defendant, the purpose of which was to solicit Plaintiff to purchase various insurance plans.

27. These calls began with an AI-generated voice message. The call then was transferred to a live person at a call center, who then transferred Plaintiff to a registered insurance agent.

28. Since the calls began in or about June 2026, Plaintiff has received many dozens, if not hundreds, of the unsolicited telemarketing calls, many of which began with or consisted of a prerecorded voice message synthetic or robotic voice, no live person on the line.

29. From the time he began receiving the calls in or about June 2026, Plaintiff requested many dozens of times that no further calls be made to his cell phone number.

30. Notwithstanding Plaintiff's request, the calls from or on behalf of Defendant persisted at least through September 19, 2026, if not later.

31. With respect to the artificial or prerecorded calls that Defendant made to Plaintiff or that were made to Plaintiff on Defendant's behalf, the beginning of the message failed to state clearly the identity of the business, individual, or other entity that was responsible for initiating the call. On a number occasions, Plaintiff remained on the calls long enough—sometimes 20 minutes or more—until the calls were transferred to an individual who identified themselves as working with or on behalf of Insurance Supermarket.

32. On August 12, 2026, Plaintiff informed Defendant in writing that his cell phone number was registered on the DNC. As he had done previously, Plaintiff demanded that Defendant stop making the unsolicited telemarketing calls.

33. The next day, August 13, 2026, Defendant wrote back to Plaintiff, acknowledged Plaintiff's request that Defendant cease all unsolicited telemarketing calls to Plaintiff, represented that it had added Plaintiff's cell phone number to Defendant's internal "Do Not Call Registry," apologized for the unsolicited telemarketing calls that it had made to Plaintiff, and recommended that Plaintiff re-register for the DNC.

34. Plaintiff re-registered for the DNC on August 18, 2026.

35. Notwithstanding Plaintiff's repeated and unambiguous requests that Defendant stop calling him, his representation to Defendant that his phone number was on the DNC, Defendant's written acknowledgement that it had been calling Plaintiff, and Defendant's written representation on August 13, 2026 that it added Plaintiff's phone number to Defendant's "Do Not Call Registry," Defendant continued to make many dozens of unsolicited telemarketing calls to Plaintiff, including calls placed more than ten business days after Plaintiff's August 12, 2026 written request (i.e., after August 26, 2026).

36. To the extent any of the calls were physically placed to Plaintiff by a third-party lead generator or call center on Defendant's behalf, Defendant is vicariously liable for those calls under federal common-law agency principles because, upon information and belief, Defendant authorized the third party to place telemarketing calls on its behalf; controlled the manner and means of the calls, including the transfer of calls to Defendant's licensed agents; accepted the transferred calls and the resulting sales opportunities; and continued to accept those benefits with knowledge of the calling practices, including after Plaintiff's written stop request. *See Campbell-*

*Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013).

37. Plaintiff never gave his cell phone number to Defendant for Defendant's use to make telemarketing calls to Plaintiff.

38. Plaintiff never consented to receiving the unsolicited telemarketing calls from Defendant.

39. Plaintiff has no existing business relationship with Defendant.

40. Rather, Plaintiff only provided his cell phone number to Defendant as part of his request that Defendant cease making telemarketing calls to Plaintiff so that there would be no uncertainty as to the phone number to which Defendant should stop making telemarketing calls.

41. The unauthorized telemarketing calls Plaintiff received from or on behalf of Defendant caused Plaintiff harm—including annoyance, nuisance, and an invasion of his privacy. Moreover, these calls tied up Plaintiff's telephone line and interfered with his use and enjoyment of his phone.

42. To remedy these injuries, Plaintiff brings this suit under the TCPA on behalf of himself and on behalf of all other similarly situated persons.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the Classes defined below:

> **Do Not Call Registry Class:** All persons in the United States who, from four years prior to the filing of this action through class certification, (1) received a phone call or text message made by Defendant (or by a person or entity acting on Defendant's behalf) more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least 31 days, (4) the phone call or text message encouraged the recipient to purchase an insurance plan, and (5) the recipient had never been a customer of Defendant.

**<u>Internal Do Not Call Class:</u>** All persons in the United States who, from four years prior to the filing of this action through class certification, (1) received more than one telemarketing call within any 12-month period from or on behalf of Defendant, (2) at least one of which was made after the period permitted by 47 C.F.R. § 64.1200(d)(3) for honoring the person's request that Defendant (or a person or entity acting on behalf of Defendant) stop calling.

**<u>Prerecorded Voice Class:</u>** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, received a non-emergency telephone call made by or on behalf of Defendant to a cellular phone through the use of an artificial or prerecorded voice, and who were not and had never been a customer of Defendant.

44. Excluded from the Classes are: (1) any judge or magistrate presiding over this action, along with the members of their families; (2) Defendant, together with its subsidiaries, parents, successors, and predecessors, any entity in which Defendant or its parents hold a controlling interest, and Defendant's present and former employees, officers, and directors; (3) Plaintiff's counsel; (4) any person who properly and timely files a request to be excluded from the Classes; (5) the legal representatives, successors, or assigns of any excluded person; and (6) any person whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates that the Class definitions may need to be amended after appropriate discovery.

45. **Numerosity**: Defendant engaged in a widespread pattern of unauthorized telemarketing. Upon information and belief, Defendant made calls to hundreds, if not thousands, of Class Members, who are geographically dispersed throughout the United States. Therefore, individual joinder is impracticable..

46. **Commonality and Predominance**: Numerous questions of law and fact are common to the claims of Plaintiff and the Classes, and those common questions predominate over any questions affecting only individual members. The common questions include, without limitation, the following:

(a) whether Defendant's conduct contravened the TCPA;

(b) whether Defendant or its agents placed unsolicited calls to Plaintiff and the members of the Do Not Call Registry Class without first securing consent;

(c) whether Defendant made more than one call within a 12-month span to Plaintiff and other consumers whose numbers had been registered with the DNC for at least 31 days as of each call;

(d) whether Defendant placed calls using an artificial or prerecorded voice to the cellular telephones of Plaintiff and the members of the Prerecorded Voice Class without first obtaining prior express written consent;

(e) whether Defendant failed to maintain the procedures required by 47 C.F.R. § 64.1200(d), including by failing to honor do-not-call requests within the time required by 47 C.F.R. § 64.1200(d)(3);

(f) whether the calls amount to violations of the TCPA; and

(g) whether the members of the Classes are entitled to treble damages because Defendant's conduct was knowing or willful.

47. **Typicality**: Plaintiff's claims are typical of the proposed Classes. Like all class members, Plaintiff: (1) received more than one telephone solicitations during a 12 month period after registering his residential telephone number on the DNC; (2) received two or more telephone solicitations within a 12 month period after communicating to Defendant that he did not wish to receive calls; and (3) received a non-emergency telephone call on his cellular telephone through the use of an artificial or prerecorded voice, despite never having been a customer of Defendant. There are no unique defenses applicable only to Plaintiff.

48. **Adequate Representation**: Plaintiff will fairly and adequately protect and represent the interests of the Classes and has engaged counsel experienced and competent in class litigation. Plaintiff holds no interests antagonistic to those of the Classes, and Defendant has no defenses peculiar to Plaintiff. Plaintiff and his counsel are dedicated to prosecuting this action vigorously for the benefit of the Class members, and Plaintiff's counsel have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

49. **Injunctive or Declaratory Relief**: Certification of this class action is also appropriate because Defendant has acted, or declined to act, on grounds that apply generally to the Classes as a whole, thereby making final injunctive relief appropriate on a class-wide basis and requiring the Court to impose uniform standards of conduct toward the Class members. Defendant's business practices affect the members of the Classes uniformly, and Plaintiff's challenge to those practices turns on Defendant's conduct toward the Classes as a whole rather than on facts or law unique to Plaintiff.

50. **Appropriateness**: Moreover, the damages sustained by individual Class members are likely to be modest relative to the burden and expense of litigating each claim separately in the complex litigation Defendant's conduct necessitates. It would therefore be virtually impossible for Class members to secure effective relief from Defendant's misconduct on an individual basis. A class action affords the advantages of a single adjudication, economies of scale, and comprehensive oversight by one court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(c))**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this Complaint as though fully set forth herein.

52. The regulation implementing the TCPA, 47 C.F.R. § 64.1200(c), states that "[n]o person or entity shall initiate any telephone solicitation to" "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

53. Under 47 U.S.C. § 227(c), any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" institute a private action premised on a violation of those regulations, which were adopted to safeguard telephone subscribers' privacy interest in avoiding unwanted telephone solicitations.

54. Defendant contravened 47 C.F.R. § 64.1200(c) by initiating—or causing to be initiated—telephone solicitations to subscribers like Plaintiff and the members of the Do Not Call Registry Class, all of whom had registered their telephone numbers on the National Do Not Call Registry, the federally maintained list of persons who do not wish to receive telephone solicitations, at least 31 days before the calls at issue. See also 47 C.F.R. § 64.1200(e) (applying § 64.1200(c) to wireless telephone numbers).

55. Plaintiff and the Do Not Call Registry Class are entitled to relief under 47 U.S.C. § 227(c)(5) because, as described above, they received more than one call within a 12-month period placed by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200.

56. Because of Defendant's conduct alleged herein, Plaintiff and the Do Not Call Registry Class have been harmed and are entitled, among other things, to recover up to $500 for each such violation of 47 C.F.R. § 64.1200 pursuant to 47 U.S.C. § 227(c)(5)(B).

57. Because of Defendant's conduct alleged herein, Plaintiff and the Do Not Call Registry Class are entitled to injunctive relief as against Defendant pursuant to 47 U.S.C. § 227(c)(5)(A).

58. To the extent the Court finds Defendant's misconduct to have been willful or knowing, the Court should treble the statutory damages available to the members of the Do Not Call Registry Class under 47 U.S.C. § 227(c)(5).

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d))**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

59. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this Complaint as though fully set forth herein.

60. The TCPA's implementing regulations prohibit any person or entity from initiating any call for telemarketing purposes to a residential telephone subscriber unless that person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

61. Those procedures must meet minimum standards, including that (a) a person or entity making calls for telemarketing purposes must honor a residential subscriber's do-not-call request within a reasonable time, not to exceed ten business days from receipt of the request, 47 C.F.R. § 64.1200(d)(3); and (b) the caller must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted, 47 C.F.R. § 64.1200(d)(4).

62. These requirements apply to telephone solicitations and telemarketing calls made to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

63. Defendant violated 47 C.F.R. § 64.1200(d) by initiating, or causing to be initiated, telemarketing calls to Plaintiff and the members of the Internal Do Not Call Class after they had



KAPLAN ROTHSTEIN PRÜSS PERAZA, P.A.
OFFICES AT GRAND BAY PLAZA. 2665 SOUTH BAYSHORE DRIVE. PENTHOUSE 2B. MIAMI, FL 33133 TEL. 305.374.1920

asked Defendant to stop calling them and after the period permitted by 47 C.F.R. § 64.1200(d)(3) had run; by failing to provide the identifying information required by 47 C.F.R. § 64.1200(d)(4); and, upon information and belief, by failing to institute and maintain the procedures required by 47 C.F.R. § 64.1200(d).

64. Plaintiff and the members of the Internal Do Not Call Class each received more than one telephone call within a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), and are therefore entitled to relief under 47 U.S.C. § 227(c)(5).

65. Plaintiff and the Internal Do Not Call Class are entitled to recover up to $500 for each such violation pursuant to 47 U.S.C. § 227(c)(5)(B), and to injunctive relief pursuant to 47 U.S.C. § 227(c)(5)(A).

66. To the extent the Court finds Defendant's misconduct to have been willful or knowing, the Court should treble the statutory damages available to the members of the Internal Do Not Call Class under 47 U.S.C. § 227(c)(5).

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A)(iii))**
**(On Behalf of Plaintiff and the Prerecorded Voice Class)**

67. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 of this Complaint as though fully set forth herein.

68. Defendant made, or had made on its behalf, telemarketing calls using an artificial or prerecorded voice to the cellular telephone numbers of Plaintiff and the Prerecorded Voice Class members without their prior express written consent. See 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

69. The calls were not made for "emergency purposes," as defined by 47 C.F.R. § 64.1200(f)(4), and otherwise were not exempted by an FCC rule or order.

70. Defendant, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).

71. As a result of Defendant's unlawful conduct, Plaintiff and the Prerecorded Voice Class members are entitled to an award of $500 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Because of Defendant's conduct alleged herein, Plaintiff and the Prerecorded Voice Class are entitled to injunctive relief as against Defendant pursuant to 47 U.S.C. § 227(b)(3)(A).

73. To the extent the Court finds Defendant's misconduct to have been willful or knowing, the Court should treble the statutory damages available to the members of the Prerecorded Voice Class under 47 U.S.C. § 227(b)(3).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court grant the following relief:

(a) Enter an order certifying this case as a class action on behalf of the Classes as defined above, appointing Plaintiff as the representative of the Classes, and designating his attorneys as Class Counsel;

(b) Award statutory damages, trebled for willful or knowing violations, together with costs and, to the extent permitted by law;

(c) Enter a declaration that Defendant's actions, as described above, violate the TCPA;

(d) Enter an injunction requiring Defendant to cease all unsolicited calling activity that violates the TCPA, and to otherwise protect the interests of the Classes; and

(e) Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 30, 2026

Respectfully submitted,

By: /s/ Jeffrey B. Kaplan
**Jeffrey B. Kaplan, Esq.**
Florida Bar No. 039977
JKaplan@krp2.com
**Lorenz Michel Prüss, Esq.**
Florida Bar No. 581305
LPruss@krp2.com
Secondary E-mail Adress: KMontalvo@krp2.com
**KAPLAN ROTHSTEIN PRÜSS PERAZA, P.A.**
2665 South Bayshore Drive, PH 2B
Coconut Grove, Florida 33133
Telephone: (305) 374-1920
***Attorneys for Plaintiff and the putative Classes***